UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GREAT MIDWEST INSURANCE COMPANY, a foreign corporation,

      Plaintiff,

v.

BIG SPAN STRUCTURES, LLC., a Florida corporation, GERMAN BUITRAGO, individually, ANDREA MONTEALEGRE, individually, and TIMOTHY NEE, individually,

      Defendants.
_____/

Case No.: 5:24-CV-00534

**MOTION FOR ENTRY OF FINAL JUDGMENT
AFTER DEFAULT AGAINST DEFENDANT TIMOTHY NEE**

Plaintiff, Great Midwest Insurance Company ("Great Midwest"), by and through undersigned counsel, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, and Local Rule 1.10 of the Middle District of Florida, hereby files this Motion for Entry of Final Judgment after Default against Defendant, Timothy Nee (the "Indemnitor"), for his failure to serve or file any paper or pleading in this matter.

    **I.**    **SUMMARY OF ARGUMENT**

Great Midwest seeks final judgement after default against the Indemnitor resulting from substantial losses Great Midwest suffered from issuing a Performance Bond and Payment Bond (the "Bond") to Big Span Structures, LLC ("Big Span") for certain work on a project known as the Loggerhead Marine Project (the "Project").

Specifically, the Indemnitor's failure to honor his joint and several indemnity obligations to Great Midwest pursuant to the General Agreement of Indemnity (the "Agreement") that Great Midwest required of the Indemnitor as a prerequisite of issuing the Bond. Because the Indemnitor failed to serve or file any paper or pleading in this matter in response to Great Midwest's Complaint, and because the Clerk has entered a default against him (D.E.#34), Great Midwest is entitled to default judgment for its losses incurred to date as a result of having issued the Bond pursuant to the clear and unambiguous terms of the Agreement.

## II.    BACKGROUND

1.    As part of its business, Great Midwest issues construction bonds and stands as surety for selected contractors. *See* Affidavit of Alex Kahn attached hereto as **Exhibit "A"** (the "Affidavit") at ¶ 4.

2.    In connection with its work, Big Span from time to time required surety construction bonds for construction projects on which it desired to work. *Id.* at ¶ 5.

3.    To confirm and secure their multiple obligations to Great Midwest and in exchange for Great Midwest's issuance of bonds for Big Span, the Indemnitors[1] - German Buitrago, Andrea Montealegre, Timothy Nee, and Big Span - entered into an indemnity agreement with Great Midwest. *Id.* at ¶ 6.

---

[1] For the purposes of this Motion, "Indemnitor" will refer solely to Timothy Nee.

4. Specifically, on April 17, 2020, the Indemnitor executed the Agreement in favor of Great Midwest. A true and correct copy of the Agreement is attached and incorporated into the Affidavit as **Exhibit "1".**

5. According to the Agreement, the Indemnitor agreed, in part, to:

> Jointly and severally, covenant, promise and agree to indemnify and hold harmless Surety from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon at the rate set forth in Section 2.7 hereof, which Surety may sustain or incur or for which the Surety becomes liable or has reason to believe it may be, or may become liable by reason of or in consequence of the execution and/or delivery by Surety of any Bond(s) on behalf of any indemnitor, whether or not such Bond(s) has been issued prior to execution hereof and whether or not Surety shall have paid any amount on account thereof, including, without limitation, the following…."

[Exhibit 1, para. 3].

6. Finally, the Indemnitor agreed that Great Midwest "shall have the right to in its sole and absolute discretion to determine whether any claims under a Bond and/or connection with a bonded project shall be paid, compromised, defended, prosecuted or appealed. Surety's decision shall be final and binding upon the Indemnitors." [Exhibit 1, para. 4.1].

7. The execution of the Agreement, and the Indemnitor's undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent and prerequisites to Great Midwest issuing any bonds naming Big Span as a principal on any bond. Affidavit at ¶ 8.

8. At the Indemnitor's request and in consideration with his promise to comply with the terms of the Agreement, Great Midwest issued a Performance Bond and Payment Bond naming Big Span as Principal and Kast Construction Company, LLC ("Kast") as Obligee on the Project in Juno Beach, Florida. The penal sum of the Bond is $772,687.79. Affidavit at ¶ 9.

9. Disputes arose between Big Span and Kast, and on February 14, 2024, Kast defaulted Big Span. Affidavit at ¶ 10.

10. After investigating Kast's claims, Great Midwest agreed to pay Kast $122,936.96 in exchange for a partial discharge of performance bond and a release from known and unknown claims arising out of or related to the remaining work on the Project. Affidavit at ¶ 11.

11. On September 11, 2024, Great Midwest served the Indemnitor a demand for indemnification pursuant to its rights under the Agreement, wherein it requested the principal amount paid to Kast plus $2,747.62 for incurred expenses, totaling to $125,411.29. A true and correct copy of Great Midwest's demand is attached into the Affidavit as Exhibit **"2"**.

12. The Indemnitor failed to respond, prompting this lawsuit.

13. On October 1, 2024, Great Midwest filed its Complaint with this Court, alleging Contractual Indemnity and Common Law Indemnity (the "Complaint"). A copy of the Complaint is attached as **Exhibit "B"**.

14. On January 13, 2025, this Court entered an order granting Great Midwest an extension of time to effect service on the Indemnitor. (D.E.# 24)

15. On March 27, 2025, this Court entered an order authorizing to serve the Indemnitor by publication. (D.E.#28)

16. On May 6, 2025, after having satisfied the requirements for service by publication, Great Midwest filed a motion for entry of a clerk's default against the Indemnitor. (D.E. 32)

17. On June 4, 2024, this Court entered a Clerk's Entry of Default against the Indemnitor, Timothy Nee. (D.E. #34)

18. The General Agreement of Indemnity is unequivocal and specific in setting forth the Indemnitor's obligation to indemnify and keep Great Midwest indemnified "from and against any and all loss whatsoever" which includes attorneys' fees and consultants' fees as a result of executing the Bond or because of the Indemnitor's failure to comply with the General Agreement of Indemnity.

19. Great Midwest has retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for their services rendered.

20. Accordingly, pursuant to Middle District Rule 1.10(c), Great Midwest moves for entry of final default judgment against Defendant Timothy Nee.

### III. Background

#### A. Liability

As this Court has held, "[t]he effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. *Nilaj v. MGO Labs, LLC,* 2024 WL 3426884, at *2 (M.D. Fla.

2024); *Gray Ins. Co. v. WRP Const., Inc.*, 2023 WL 2974255, at *2 (M.D. Fla. 2023). Great Midwest properly alleged all elements of the cause of actions, contractual indemnity and common law indemnity, alleged in the complaint. Pursuant to Florida law, "[a] contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party." *Sorvillo v. Ace Hardware Corp.*, 2014 WL 2506138, at *3 (M.D. Fla. 2014) citing *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So.2d 638, 643 (Fla. 1999).

Great Midwest has properly pled its claim for contractual indemnity in the Complaint. First, Great Midwest alleges the Indemnitor signed the General Agreement of Indemnity and attaches the Agreement as Exhibit "A" to the Complaint. (D.E. #1 at ¶ 12). Second, Great Midwest pled that "Indemnitors agreed, in part, to: Jointly and severally, covenant, promise and agree to indemnify and hold harmless Surety from and against ANY AND ALL LOSS WHATSOEVER.." (D.E. #1 at ¶ 15). Finally, Great Midwest alleges that after an investigation of [Third-Party] Kast's claims, Great Midwest agreed to pay Kast $122,936.96 in exchange for a partial discharge of performance bond and a release from known and unknown claims arising out of or related to the remaining work on the Project." (D.E. #1 at ¶ 22).

Great Midwest has also provided an affidavit from its Assistant Vice President of Surety Claims, Alex Kahn, attesting to the accuracy of the factual allegations in the Complaint, the basis for the Indemnitors' liability to Great Midwest, and Great Midwest's damages which is attached hereto and incorporated herein by reference as Exhibit "A." Consequently, taking Great Midwest's factual allegations as true, the

6

Indemnitors are liable to Great Midwest for contractual indemnity.

### B.   Damages

Although a default admits the factual allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default; rather, the Court determines the amount and character of damages to be awarded." *Whole Space Industries, Ltd. v. Gulfcoast Intern. Products, Inc.*, 2009 WL 2151309, *3 (M.D. Fla. 2009). As quoted above, the Indemnitors agreed to:

> Jointly and severally, covenant, promise and agree to indemnify and hold harmless Surety from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereron at the rate set forth in Section 2.7 hereof, which Surety may sustain or incur or for which the Surety becomes liable or has reason to believe it may be, or may become liable by reason of or in consequence of the execution and/or delivery by Surety of any Bond(s) on behalf of any indemnitor, whether or not such Bond(s) has been issued prior to execution hereof and whether or not Surety shall have paid any amount on account thereof, including, without limitation, the following…."

(D.E. #1 at ¶ 15).

Great Midwest has attached Mr. Kahn's affidavit in support of its damages to this motion. As the affidavit indicates, Great Midwest has incurred losses totaling $125,411.29, not inclusive of attorneys' fees. Affidavit at ¶ 13. Specifically, Great Midwest paid Kast $122,936.57 to settle the claim. Affidavit at ¶ 12. Great Midwest incurred expenses of $2,474.62 while investigating the claim. Affidavit at ¶ 12. Further,

Great Midwest has incurred $7,247.70 in attorneys' fees as of October 1, 2024, the date the Complaint was filed. Affidavit at ¶ 14.

Section 4.4 of the agreement requires that: "an itemized statement of claims or losses paid or liabilities incurred and/or expenses paid or incurred, declared to be true and correct by an employee or agent of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of liability hereunder of Principal and Indemnitors" [Exhibit 1, para. 4.4].

Accordingly, Great Midwest seeks a judgment for its damages in the amount of $125,411.29.

Great Midwest is further entitled to interest on its loss at the "maximum rate permitted by law, from the date such payments are made." In Florida, the maximum rate of interest permitted by law is 18% (eighteen percent). §687.02, Florida Statutes. For ease of calculation, Great Midwest is claiming interest as follows:

1.  At the rate of 18% per annum on the $125,411.29 payment to Kast (along with the $2,747.62 in fees incurred investigating the claim) from April 29, 2024, to the date of entry of Judgment; and

2.  At the rate of 18% per annum on its attorneys' fees and costs in the amount of $7,247.70 from the date of filing of the Complaint, October 1, 2024, to the date of entry of Judgment.

## IV.   CONCLUSION

Great Midwest respectfully requests that the Court enter judgment in favor of Great Midwest and against the Indemnitors in the amount of $125,411.29, plus pre-

judgment interest as follows:

1. At the rate of 18% per annum on the $125,411.29 payment to Kast (along with the $2,747.62 in fees incurred investigating the claim) from April 29, 2024, to the date of entry of Judgment; and

2. At the rate of 18% per annum on its attorneys' fees and costs in the amount of $7,247.70 from the date of filing of the Complaint, October 1, 2024, to the date of entry of Judgment.

Great Midwest further respectfully requests an award of post-judgment interest at the federal rate from the date of entry of judgment until it is paid in full, and for such other legal and equitable relief to which it may be entitled.

Dated: June 26, 2025

/s/ *John Robert Davenport, Jr.*
TY G. THOMPSON, ESQ.
Florida Bar No. 0585041
tthompson@pdtlegal.com
ofernandez@pdtlegal.com
JOHN R. DAVENPORT, JR., ESQ.
Florida Bar No. 1059146
jdavenport@pdtlegal.com
Lpeterson@pdtlegal.com
PASKERT DIVERS THOMPSON
100 N. Tampa Street, Suite 3700
Tampa, Florida 33602
(813) 229-3500 – Telephone

*Counsel for Great Midwest Insurance Company*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 26, 2025, he caused a true and correct copy of the foregoing document to be served electronically on the parties registered to receive CM/ECF notification from the Court. A true and correct copy of the foregoing was also served by certified mail/return receipt requested:

Timothy Nee
5068 SW 114th Street Road
Ocala, Florida 34476

                                        By: /s/ *John Robert Davenport, Jr.*
                                                *Attorney*